Carvel BRIGHT; Frank Ledford,
Plaintiffs–Appellants,

v.

Harold McCLURE individually and in his
official capacity, a Clerk of the Superi-
or Court of Clay County, North Car-
olina, Defendant–Appellee.

No. 88–3974.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 13, 1988.

Decided Jan. 17, 1989.

J. Hue Henry (Henry & Pearson, P.C., on brief), for plaintiffs-appellants.

Richard L. Griffin, Asst. Atty. Gen. (Lacy H. Thornburg, Atty. Gen., on brief), for defendant-appellee.

Before RUSSELL and WILKINS, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

In this action under 42 U.S.C. § 1983 (1981), the plaintiffs, two former magistrates in Clay County, North Carolina, charged that the defendant, a newly elected clerk of superior court of Clay County, failed to include them in the clerk's list of nominees for the magisterial positions because of the plaintiffs' affiliation with the Democratic Party. The district court granted the defendant's motion for summary judgment, holding that the action against him in his individual capacity was barred by the doctrine of qualified immunity, while the action against him in his official capacity, insofar as it sought damages, was barred by the state's sovereign immunity. Insofar as the action against the clerk in his official capacity sought equitable relief, the district court concluded that the action was moot.

On the plaintiffs' appeal from dismissal of the claims, we affirm.

## I.

The defendant McClure was a farmer in rural western North Carolina Clay County. He was inexperienced in politics, but in 1986 he ran for the office of clerk of superior court of Clay County. He obtained the Republican nomination for that office and then prevailed in the general election.

Shortly after the election, McClure attended a training school for clerks of court. There, for the first time, he learned of the procedure for the appointment of state magistrates and of the role of the clerk of court in their nomination. He was to take office on December 1, 1986 and, by December 16, 1986, he was required to submit a list of nominees for the open magisterial positions to the county's senior resident Superior Court judge. The judge could request the clerk to submit additional nominees, but he was to make appointments from the nominees whose names were submitted to him by the clerk.

The defendant submitted his list of nominees on time, but each person on the list was a Republican who had made formal application to the defendant for one of the magisterial positions. Neither of the plaintiffs was on the list. Neither had filed a formal application with the new clerk of court, but each had written a letter requesting renomination.

Without requesting the submission of additional names, the judge made the appointments from the list submitted to him by the defendant.

This action was commenced some seven months later.

## II.

In granting summary judgment for the defendant, the district court did not address the factual issues involving the defendant's motivation in failing to include the plaintiffs' names on his list of nominees. There was circumstantial evidence from which a fact finder could draw an inference that the defendant's motivation was political and that his failure to nominate either of the plaintiffs was because of their affiliation with the Democratic Party. The inference is not compelling for the size of the sample was small, and there was evidence of substantial irregularities in the

plaintiffs' conduct of their magisterial offices. There was also evidence that each of the plaintiffs had worked for the sheriff at the same time that the plaintiffs were performing official duties as magistrates, a substantial conflict of interest.

The judge concluded that the defendant was entitled to summary judgment, not because the plaintiffs' substantive claims were insupportable, but because of the immunities protecting the defendant. He made no finding as to the motivation of McClure in preparing his list of recommended appointees. The factual dispute as to the basis of the substantive claim remains unresolved, for, because of the defendant's immunities, the plaintiffs cannot prevail in any event.

### III.

■ It is now well settled that a public employee may not be discharged because of political affiliation. *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *cf. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed. 2d 471 (1977). Nor may one be refused public employment on that account. The district court concluded, however, that the rule of those cases had no application here because the defendant was not the appointing officer and there was no prospect of an employer-employee relationship between the defendant and either of the plaintiffs. The court was of the opinion that the rule does not extend to a process of nomination subject to later discretionary action by another appointing official.

■ It is true that magistrates in North Carolina are appointed by judges. They are officials of the court, subject to supervision and control by judges and not by the clerk of court. The clerk has a statutory role in the appointing process, however. While the judge may request submission of additional names by the clerk of court, the judge's appointments are to be made from the lists submitted to him by the clerk. This is not a case of informal consultation or the submission by the clerk of court of unsolicited suggestions. The clerk's role is statutory and an essential part of the appointive process. It should be subject to the same rules applicable to appointments themselves.

It is also true that there is nothing resembling an employer-employee relationship between the clerk of court and magistrates. That circumstance, however, does not negate the fact that, by statute, the clerk serves an official role in the process of magisterial appointment. *See Lewis v. Blackburn,* 734 F.2d 1000, 1010–12 (4th Cir.1984) (Ervin, J. dissenting), *rev'd,* 759 F.2d 1171 (4th Cir.1985) *(en banc)* (adopting dissenting opinion of Ervin, J.), *cert. denied,* 474 U.S. 902, 106 S.Ct. 228, 88 L.Ed.2d 228 (1985).

After concluding that the rule against political discrimination has no application in the circumstances of this case, the district court stated that if it was arguably incorrect on that score, the defendant was protected from an action against him in his individual capacity because of qualified immunity.

■ Public officials, such as the defendant, are clothed with qualified immunity in the performance of discretionary functions when the action does not violate clearly established statutory or constitutional rights of which the official knows or reasonably should be aware. *Harlow v. Fitzgerald,* 457 U.S. 800, 815–16, 102 S.Ct. 2727, 2736–37, 73 L.Ed.2d 396 (1982); *cf. Scheuer v. Rhodes,* 416 U.S. 232, 247–48, 94 S.Ct. 1683, 1691–92, 40 L.Ed.2d 90 (1974).

■ The district court found that the defendant was unaware of the *Branti–Elrod* rule. Inferentially, the district court also found against the plaintiffs' claim that the defendant should have been aware of the rule. The district judge himself thought the rule inapplicable in this situation, and, in his discussion, the district court observed that the appointing state judge apparently was unaware of the rule. The state judge, who had gained his judicial office as a nominee of the Democratic Party, simply made the appointments from

the list submitted by the clerk without any request for further nominations.

The finding that the doctrine of qualified immunity was applicable warranted dismissal of the claims against the defendant in his individual capacity.

## IV.

 The action against the defendant in his official capacity is clearly one against the state of North Carolina. The state has an Eleventh Amendment immunity from an action for damages, for the Congress has made no move to impose § 1983 liabilities upon states, and North Carolina has done nothing to waive its immunity. *McConnell v. Adams*, 829 F.2d 1319, 1328 (4th Cir. 1987), *cert. denied sub nom.*, *Virginia, ex rel. State Bd. of Elections v. Kilgore*, —— U.S. ——, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988); N.C.Gen.Stat. §§ 58–27.23(c) (1988), 143–300.6(a) (1987).

Even though sovereign immunity protects a state from liabilities for damages, equitable relief may still be available and appropriate. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

As to possible equitable relief, however, the district court thought the case was moot. There had been a short space of time between the defendant's submission of his list of nominees and the judge's appointment of the new magistrates. This action was not commenced until seven months later, however. By then, the positions had long since been filled.

Implicit in the district court's conclusion that the case was moot is a finding that a balancing of the equities would warrant a judge's exercise of his discretion against issuance of an injunction.

This opinion should serve the office of a declaratory judgment and inform the parties that state magisterial positions are not food for political patronage. Since there has been no finding that McClure violated the rule and since, in any event, he has the shield of immunity in both his individual and official capacities, the district court properly entered judgment for him.

## V.

The judgment is affirmed.

AFFIRMED.