FRONT ROYAL AND WARREN COUNTY INDUSTRIAL PARK CORPORATION, Plaintiff,

v.

TOWN OF FRONT ROYAL, VA., et al., Defendants.

Fred W. McLAUGHLIN, et ux., Plaintiffs,

v.

TOWN OF FRONT ROYAL, VA., et al., Defendants.

Civ. A. Nos. 87–0019–H, 87–0020–H.

United States District Court, W.D. Virginia, Harrisonburg Division.

March 16, 1989.

Myron C. Smith, Robert C. Fitzgerald, Fairfax, Va., for plaintiff Front Royal and Warren County Indus. Park Corp.

David N. Crump, Jr., Adamson, Crump & Sharp, P.C., Front Royal, Va., and Glenn M. Hodge, Douglas L. Guynn, WAW, Harrisonburg, Va., for defendants.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This matter is presently before the court on cross motions for summary judgment. For the reasons elaborated below, defendants' motion for summary judgment is denied and plaintiffs' motion for summary judgment is granted.

### I.

The plaintiffs in this matter are the Front Royal and Warren County Industrial Park Commission and two Front Royal, Virginia land owners. Plaintiffs own parcels of land in an area annexed by the Town of Front Royal under separate Annexation Court orders of 1976 and 1978. The orders of annexation directed the Town of Front Royal to extend sewer service to the parcels of land covered by the annexation orders as expeditiously as was practicable and, in any event, within five years of the entry of the orders. Since the Town of Front Royal has not yet extended sewer service to the annexed parcels owned by plaintiffs, plaintiffs seek to vindicate their rights under the fifth and fourteenth amendments and 42 U.S.C. § 1983 through this consolidated action.

Plaintiffs allege that the refusal by defendants to extend sewer service to their parcels has deprived plaintiffs of all economically viable uses of their property. In addition, plaintiffs also contend that their right to equal protection of the law has been violated because, while defendants provided sewer service to land owners whose parcels in the annexed area were situated similarly to plaintiffs' parcels, defendants have refused to extend the sewer lines to instant plaintiffs' parcels. Defendants have offered several affirmative defenses, among them the defenses of absolute legislative immunity and executive qualified immunity. By an earlier order of this court dated February 22, 1988, this court granted plaintiffs' motion to strike the affirmative defense of legislative immunity and, conversely, denied defendants' motion to dismiss on the grounds of legislative immunity.

Defendants entered an interlocutory appeal before the Fourth Circuit Court of Appeals in regard to the dismissal of their claim of absolute legislative immunity. After noting that the denial of a claim of absolute immunity is appropriate for interlocutory appeal, the Fourth Circuit concluded that "We agree with the district court that defendants' decisions had to do with zoning enforcement rather than with rule making." *Front Royal and Warren County Industrial Park Corp., et al. v. Town of Front Royal, Virginia, et al.*, 865 F.2d 77, 79 (4th Cir.1989). Therefore, the Fourth Circuit found that "The district court was correct to conclude that the defendants' decisions were not legislative" and, thus, defendants were not entitled to a defense of absolute immunity. *Id.* at 78–79.

### II.

■ Defendants also offer the affirmative defense of qualified executive immunity. Earlier, this court had denied plaintiffs' motions to strike the qualified immu-

nity defense (and, concomitantly, denied defendants' motion to dismiss on the basis of the qualified immunity defense) because "The court finds that the present record provides an inadequate basis for making such a determination." *Front Royal and Warren County Industrial Park Corp., et al. v. Town of Front Royal, Virginia, et al.*, CA Nos. 87–0019–H and 87–0020–H, slip op. at 4, 1988 WL 156285 (W.D.Va. Feb. 22, 1988). After recourse to materials not available within the confines of a motion to dismiss and after consideration of the briefing materials submitted, the court finds that defendants' claim of qualified immunity is an issue which is ripe for disposition on summary judgment. Accordingly, the court finds that defendants are not entitled to the defense of qualified immunity and therefore now denies that portion of their motion for summary judgment.

■ Qualified immunity is, in essence, the right not to have to stand trial if, among other conditions, the acts at issue were performed by defendants within the context of their official, executive capacity. As the Fourth Circuit Court of Appeals has held,

> Qualified immunity thus protects government officials not only from liability, but from *trial*, in recognition of the fact that subjecting officials unnecessarily to trial leads to 'distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service.'

*Turner v. Dammon*, 848 F.2d 440, 444 (4th Cir.1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 816, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982)) (emphasis in original). Qualified immunity is largely a matter of getting the incentives right in order to provide the proper context within which government officials can conscientiously discharge their duties without fear of harassment through litigation and, at the same time, they can be held liable for the violation of a clearly established constitutionally-protected right. If an official had no recourse to qualified immunity, the Damoclean sword of potential litigation would

always push the official in favor of inaction, for "the person aggrieved by official actions may be quite willing to sue but the losses to society as a whole that come from official inaction may be more diffuse and thus less likely to result in a lawsuit." *Turner*, 848 F.2d at 444. The scope of this protection has been set out by the Supreme Court in *Harlow*. In that decision, the Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738. Recently, the Fourth Circuit has summarized the test for qualified immunity in this way, "Public officials ... are clothed with qualified immunity in the performance of discretionary functions when the action does not violate clearly established statutory or constitutional rights of which the official knows or reasonably should be aware." *Bright v. McClure*, 865 F.2d 623, 625–626 (4th Cir.1989).

As *Harlow* has indicated and as a number of subsequent decisions have reaffirmed, the standard for an official seeking to shield himself under the qualified immunity defense is an objective and not a subjective standard. 457 U.S. at 818, 102 S.Ct. at 2738; *see also Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed. 2d 523 (1987). The issue is not whether the official in question actually knew that he was violating a right of the plaintiff, but whether a reasonable person in that official's place would have known that such a right was being violated. *Turner*, 848 F.2d at 443; *Young v. Lynch*, 846 F.2d 960, 963 (4th Cir.1988). The question is one of "whether an official acting under the circumstances at issue reasonably could have believed that his action did not violate the constitutional rights asserted." *Sevigny v. Dicksey*, 846 F.2d 953, 956 (4th Cir.1988). As Justice Powell, in writing for the Fourth Circuit, has noted, the question of the applicability of qualified immunity has no reference at all to the actual good faith of the official, but rather simply to the objective test as outlined in *Harlow* and its

progeny. *Lane v. Griffin*, 834 F.2d 403, 408 (4th Cir.1987). Thus, the issue is not what the instant defendants believed but merely what reasonable people in the defendants' position would have believed about whether the acts in question violated plaintiffs' rights.

However, it is not necessary for this court to inquire deeply into the objective standard and ask what a reasonable person in instant defendants' position would have known, for another component of the qualified immunity defense is lacking in the defendants' position. The qualified immunity defense applies to government officials who are performing "discretionary functions." *Anderson*, 483 U.S. at ——, 107 S.Ct. at 3038. In order to make use of qualified immunity protection, defendants would have to show that their provision of sewer lines to the annexed area—or their refusal to provide such lines—was a discretionary function appropriate to an executive, and not a mere ministerial act. Using both the common language understanding of discretionary acts as well as the standards normally applied by courts, this court finds that the provision of sewer lines, under the specific aegis of two very explicit annexation orders, was not a discretionary function emblematic of the executive and suitable for qualified immunity, but was indisputably a ministerial function.[1]

Defendants argue that the provision of sewer lines for the annexed area is a discretionary function and attempt to rely on comments from the bench made in the context of the reconvening of the Annexation Court in 1984 as evidence that the Annexation Court intended to leave with defendants a degree of discretion, not merely in the timing but also in the actual provision of sewer lines to parcels of land in the annexed area. Defendants' Reply Memorandum In Support of Defendants' Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment, at 12–13. Defendants argue that because Judge Moon of the Annexation Court opined that it would not be reasonable for plaintiffs to force defendants to blast through rock at the cost of several million dollars per lot in order to provide sewer lines, defendants are free to exercise their discretion and engage in sweeping cost-benefit analysis for the provision of any sewer service to plaintiffs' lots. *Id.* at 13.

Two responses are appropriate to this contention by the defendants. First, it is important to note that the situation about which Judge Moon spoke was obviously an extreme hypothetical, a situation far different from that presented by the facts in the case before this court.[2] Furthermore, Judge Moon went on to say that "They [defendants] have to exercise that discretion reasonably and in accordance with the representations they have made here." *Id.* Here, he was referring to representations by defendants that sewers would indeed be provided to those parcels affected by the annexation order. *Id.* Judge Moon went on to note that the original annexation order was quite clear and that the deliberations of this reconvened Annexation Court did not uncover any significant ambiguity

1. One federal court has defined "discretionary function" in this way: "Discretionary functions have been defined as those in which a government official determines what action to take based on an individual, case-by-case analysis and in which his decision includes elements of judgment and discretion." *Biscayne Fed'l Savings & Loan Assoc. v. Pratt*, 646 F.Supp. 371, 376 n. 8 (D.C.D.C.1986). The clear mandates of the Annexation Court left defendants without the leeway for judgment and analysis necessary to convert the provision of sewer service to the annexed area into a discretionary function.

2. Judge Moon observed that, "Well, I think they will have to exercise some discretion, because certainly you [plaintiffs] are not going to make them go out there and blast through rock that is going to cost several million dollars to develop a single lot." Defendants' Reply Memorandum in Support of Defendants' Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment, at 13. There is absolutely no evidence in the record that provision of sewer service to any of the lots in the annexed area would involve a cost-to-benefit ratio which could even remotely resemble Judge Moon's hypothetical, despite defendants' plea that having to provide sewer service to the annexed area, under the annexation orders, "would spell financial disaster for the Town." *Id.* at 11. Such a claim is simple, overheated hyperbole.

in the terms of that original annexation order. *Id.*

Second, as this court will note in greater detail *infra*, the terms of the annexation orders are specific and clear and therefore suffice to undercut defendants' claim that the provision of sewer lines to the parcels owned by plaintiffs could be considered an act of discretion. In rejecting defendants' attempt to shield themselves with the defense of absolute immunity, the Fourth Circuit concluded that "The order of the Virginia Annexation Court removed what discretion defendants might otherwise have had to approve or decline plaintiffs' requests for sewer service." *Front Royal and Warren County Industrial Park Corp.,* 865 F.2d at 79.[3] Even though the Fourth Circuit made this observation within the context of ruling on the absolute immunity claim and did not address the merits of the qualified immunity claim in their opinion, this court finds that their characterization of the lack of the element of discretion in the provision of sewer lines to plaintiffs' parcels is of considerable guidance in reaching the issue before us.

 Even if one were to construe, as this court does not, the provision of sewer service for the parcels in question as a discretionary function, still this court would find the defendants are unable to utilize the shield of a qualified immunity defense. Defendants claim that they acted in good faith in refusing to provide sewer service to plaintiffs' parcels because they did not believe that they were under any obligation to provide such service. However, since the relevant legal test for determining the applicability of qualified immunity is an objective and not a subjective standard, claims by the defendants about what they knew or believed to be the case are beside the point. The legal standard is what someone, standing in shoes of the defendants, ought to have realized about the rights of the plaintiffs and the defendants' legal obligations to the plaintiffs.

Examining the explicit and clear language of the annexation orders and noting that the Town's legal officer had repeatedly advised defendants that the orders of the annexation court required the provision of sewer service to the plaintiffs' properties, this court concludes that defendants ought to have known, and that a reasonable person in their shoes would have known, that the defendants were under a legal obligation to provide sewer service to the parcels in question. The advice given to defendants by their own counsel, the Town's legal officer, over a period of several years was on occasion blunt and specific, advising defendants that the order of the annexation court brooked no interpretation, and that provision of sewer service to the lands of plaintiffs and to the lands of others in the annexed area who sought the service was, in a word, required. This bears dispositively on the question of whether the defendants should reasonably have known of the legal obligation created by the annexation order. Thus, this court finds that defendants are singularly ill-placed to attempt to make use of a qualified immunity defense.

### III.

Plaintiffs seek summary judgment under a claim that the refusal of defendants to extend the sewer lines deprived the plaintiffs of constitutionally protected property rights. Plaintiffs argue that defendants' culpable omission was an action under color of state law and constitutes a compensable taking.

Defendants respond to this charge by arguing that plaintiffs have not been deprived of *all* possible usages of their land. Further, defendants contend that plaintiffs should not be able to maintain a federal cause of action since adequate state remedies exist for plaintiffs to pursue. For instance, presumably, plaintiffs could seek to have the Annexation Court reconvened, for yet another time. In the alternative,

---

**3.** This court is fully aware that the Fourth Circuit ruled simply on the absolute immunity defense and that that defense is an issue quite separable from the question of qualified immunity. The Fourth Circuit did take care to note

that "Our decision accordingly reflects no opinion on the applicability or effect of the qualified immunity defense." *Front Royal and Warren County Industrial Park Corp.,* 865 F.2d at 78–79, n. 3.

defendants argue that plaintiffs are free to maintain an independent state cause of action to seek redress.

 However, it is proper for plaintiffs to be before this court on a takings claim under 42 U.S.C. § 1983. Clearly, the defendants acted under color of state law and, further, this court finds that said action (the action in this case consisting of an omission or a denial of a request for a required action) did deprive plaintiffs of property rights and does constitute a taking. A restriction on the use which can be made of property can result in a taking without compensation and, thus, would qualify a plaintiff for redress.[4] *Board of Supervisors of James City County v. Rowe,* 216 Va. 128, 216 S.E.2d 199 (1975). It is true, as defendants implicitly argue, that the taking or restriction on the use of plaintiffs' property is temporary in that the origin of plaintiffs' claims would be undercut if sewer service were to be provided in the future.[5] While that observation is true, it is not determinative of the takings issue, for redress is available even in the instance of what can be arguably construed as a "temporary" taking. *First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987).[6]

In addition, this court finds it is not established that adequate state remedies exist for the plaintiffs. Plaintiffs are not able to force, at least unilaterally, a reconvening of the Annexation Court. Even if the plaintiffs were in a position to obtain through their own efforts a reconvened Annexation Court, that court would not be equipped to provide the necessary relief for these plaintiffs since annexation courts have only limited remedies at their disposal. An annexation court in Virginia is a creature of statute and not a court of general jurisdiction. *Town of Christiansburg v. Montgomery County,* 216 Va. 654, 222 S.E.2d 513 (1976).

In this court's view, there is no need for the Annexation Court to reconvene yet again. Its original orders were clear and when it was previously reconvened it not only reaffirmed those orders but it indicated that the directives regarding the provision of sewer lines in those orders were also clear. Defendants attempt to argue that the annexation order contains language which is either conditional or sufficiently ambiguous in order to justify its position that defendants were under no legal obligation to provide sewer lines to parcels of the plaintiffs. However, the annexation order of December 31, 1976, contains the following language:

> *Sewer Facilities:* The Town of Front Royal shall proceed to construct interceptor and collector sanitary sewer lines in the areas herein decreed to be annexed as shown for such areas on Town Exhibit 13, the lines as shown on said exhibit for the annexation area hereby decreed shall be installed as soon as they become reasonably necessary and it becomes economically feasible so to do to serve the residents of the annexation area, *but said improvements shall in any event be completed within five years from the effective date of annexation.*

Order of the Special Court, ¶ 5(c)(2), page 4, Dec. 31, 1976, (emphasis added). The 1978

---

**4.** As Justice Holmes concluded, for the Court, "The general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922).

**5.** This is not to suggest that plaintiffs' claims would evaporate if sewer lines were installed, for the issue of past damages suffered by plaintiffs still would remain. As the Supreme Court has recently concluded, "[W]here the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective." *First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, ——, 107 S.Ct. 2378, 2389, 96 L.Ed.2d 250 (1987).

**6.** This court notes that the opinion of the Supreme Court in *First English Evangelical Lutheran Church* effectively prevents defendants from relying on *Agins v. Tiburon,* 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980), to argue that the temporary nature of the interference with the use of the property in question removes it from the category of a taking.

Annexation Decree contains parallel language regarding the provision of sewer lines. Defendants argue that the constraints of reasonable necessity and economic feasibility operate as conditions which bracket and define their entire set of ultimate legal obligations to plaintiffs. Defendants maintain that "The terms of the annexation decrees mandate no more than that the town treat requests for sewer extensions in the annexed area just like a request from anywhere else within the Town." Defendants Reply Memorandum in Support of Defendants' Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment, 10–11.

Therefore, defendants conclude that considerations of economic feasibility could justify never extending sewer lines to the plaintiffs' parcels. This is clearly contrary to the plain language of the annexation orders. Those orders set out a *terminus ante quem* for the provision of sewer service and cost-benefit analysis can operate only within the temporal boundary set by that terminus. The two annexation orders establish that the Town is obligated to provide sewer service to the parcels in question within a certain period and, while the speed with which the sewer lines are extended may be constrained by an equation of cost and benefit during the five-year period specified by each order, it is clear that any such calculus is meant only to operate prior to the expiration of each five-year period. When the annexation orders cite the constraints of necessity and feasibility, that phrase of the orders suggests a mandate which has the aura of "all deliberate speed." It is nevertheless clear that the discretion granted to defendants ex-

pired within five years of the annexation orders. In order for defendants to construe the annexation orders as they wish, they must rely on an interpretation which runs directly contrary to the clear and unambiguous language of the orders.[7] In short, the defendants can sustain this position only by eliminating from the annexation orders the language quoted *supra,* namely, "but said improvements shall in any event be completed within five years from the effective date of annexation."

 Normally, the question of whether there has been a taking would be an issue for the trier of fact, but the affidavits offered reveal that there can be no dispute that plaintiffs' parcels are worth so much less that they have been deprived of property rights. Therefore this court finds, as a matter of law, there was a taking for which plaintiffs are entitled to compensation. However, while this court finds that there can be no genuine dispute about an issue of material fact which would establish that there was a taking, there is such a dispute about the amount of damages which would be appropriate to award in this case. Therefore, while the court finds that there was a taking for which defendants are liable, the court also finds that it is not appropriate within the context of summary judgment to determine the extent or amount of liability. As plaintiffs concede in their motion for summary judgment, this issue must be reserved for the trier of fact.

### IV.

 Plaintiffs allege that their rights have been violated under the fourteenth amendment of the United States Constitu-

---

**7.** This case is to be distinguished from those cases where the annexation orders are very general in terms and grant localities what is in effect an open ended arena for discretion. For example, the annexation orders which establish the legal rights of instant plaintiffs are very different from the order at issue in *City of Staunton v. Cash,* where the Supreme Court of Virginia found that

> While the annexation decree clearly imposed upon the City a duty to make improvements in the annexed area, we do not agree that the duty was of the absolute nature asserted by

[the defendants]. The decree did not require the City to make any particular improvement at any given time. Expressing in general terms the duty imposed, the decree left to the City, in the exercise of discretion, the determination of what improvements should be made and when they should be accomplished. The decree contemplated that, in exercising this discretion, the City properly should consider the public necessity of proposed projects and the economic feasibility of suggested undertakings.

220 Va. 742, 747, 263 S.E.2d 45, 49 (1980).

tion in its equal protection clause. They argue that sewer service was provided to other properties which were similarly situated to the parcels owned by the plaintiffs. Therefore, to deny sewer service to plaintiffs' parcels would constitute unlawful, unequal treatment. In evaluating plaintiffs' equal protection claim, it is necessary to distinguish between what may be a denial of equal treatment and what is a legally cognizable denial of equal protection of the law. For example, burdening citizen X and not burdening citizen Y when both citizens are members of the same general class may be unequal treatment, but it is not necessarily a denial of equal protection. Often, equal protection refers to violations in regard to certain suspect classifications such as gender or sex. Instant plaintiffs' equal protection claim involved a different kind of classification and must call for a different type of scrutiny or analysis by the court.

Defendants argue that there has been no equal protection violation because the factors which led to a denial of sewer service to plaintiffs' parcels are those factors which are appropriate to consider in making decisions about utility extensions. They argue that other municipalities can consider costs in deciding whether to extend sewer lines. One initial problem with defendants' argument is that the other municipalities to which defendants are comparing themselves may not be under an explicit, detailed order of an annexation court to provide sewer lines. Therefore, it would misconstrue the legal situation for these defendants to be considered as operating with a blank slate or in the same position as any other municipal corporation. Defendants are correct when they note that legislative activity involving land management and similar decisions has uniformly been held to merit considerable deference from courts. *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974).[8]

But, the actions of the defendants are not legislative activities, but are nondiscretionary ministerial functions carried out under the aegis of a specific, detailed court order. The defendants are arguing that the decision not to extend sewer service must be considered as a garden variety municipal services decision. Yet, the annexation orders which form the legal backdrop to this entire matter mean that the defendants are not free simply to engage in a cost benefit analysis or to weigh the factors which municipalities ordinarily weigh when they consider whether to extend sewer service.

■ In the area of economic regulation, regulations which are challenged as violating equal protection clause are not subject to strict scrutiny by the courts. Rather, the Supreme Court has stated that

> Unless the classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest.... [I]n the local economic sphere, it is only the invidious sphere, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment.

*New Orleans v. Dukes*, 427 U.S. 297, 303–04, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976) (citations omitted). In order to prevail on a motion for summary judgment under an equal protection claim, plaintiffs would have to show that there was no rational relationship between a legitimate state interest and the decision not to provide sewer lines to plaintiffs' parcels—that the defendants' refusal to provide sewers was invidious and wholly arbitrary.

In ferreting out the existence of a rational relationship between the defendants' decision and state interests, it is important to note that it is "a legitimate state interest," *Cleburne v. Cleburne Living Center, Inc.,*

---

**8.** In this case, the Supreme Court concluded that "We deal [here] with economic and social legislation where legislatures have historically drawn lines which we respect against the charge of violation of the Equal Protection Clause if the law be 'reasonable, not arbitrary' and bears 'a rational relationship to a (permissible) state objective.'" *Village of Belle Terre v. Boras,* 416 U.S. 1, 8, 94 S.Ct. 1536, 1540, 39 L.Ed.2d 797 (1974) (citations omitted).

473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) or "a (permissible) state objective," *Village of Belle Terre v. Boraas,* 416 U.S. 1, 8, 94 S.Ct. 1536, 1540, 39 L.Ed.2d 797 (1973), to which a rational relationship must point. Obviously, avoiding the mandate of the order of the annexation court or preferring certain property owners for private, self-referential reasons cannot qualify as a "legitimate" or "permissible" state interest. To what legitimate or permissible state interest could defendants point? Most equal protection challenges which are adjudicated under the rational relationship standard fail, in large measure because the vast majority of defendants in those cases are operating within the normal legal context where a panoply of possible state interests can be cited. However, as noted *passim,* instant defendants are operating within a more constricted legal universe. State interests which, in other settings, would be considered legitimate or permissible and would serve to vindicate a legislative (or administrative) decision are not available to instant defendants because of the orders of the annexation court. These orders rightfully circumscribe the range of decisions which defendants can lawfully make. Absent the explicit orders of the annexation court, defendants could point to the results of cost-benefit analysis to justify their decision not to extend sewer service. However, by the very terms of the annexation orders, defendants are no longer free to cite such considerations to justify their refusal to extend sewer service.[9] Further, the provisions of the annexation orders are not subject to challenge as being arbitrary or capricious or overreaching, for those provisions were reflections of assurances given to the annexation court by the Town in the course of the annexation proceedings.

Were this court faced only with a common law claim that defendants were obligated to provide sewer service to plaintiffs'

parcels, the outcome of the equal protection challenge might be quite different. Defendants do allege, through affidavit, that they based their decision not to extend the sewer lines on the sort of garden-variety economic factors which courts historically conclude merit judicial deference. Defendants' Memorandum in Support of Motion for Summary Judgment, 8–10. Reading this testimony in the light most favorable to defendants, as this court must do in passing on plaintiffs' motion for summary judgment, we find that the purposes articulated by defendants for their refusal to extend sewer service cannot count as legitimate state interests, given the legal mandate imposed upon the town by the annexation orders. Defendants allege that "The terms of the annexation decrees mandate no more than that the Town treat requests for sewer extensions in the annexed area just like a request from anywhere else within the Town." Defendants' Reply Memorandum in Support of Defendants' Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment, 10–11. Such is a manifestly incorrect interpretation of the annexation orders. Parcel holders in the annexed area do not stand in the same relationship to the town as those from the original portion of the town seeking sewer service. Defendants do not point to any other state interest which could qualify as a permissible anchor for the rational relationships which would justify defendants' decision to treat plaintiffs differently from (i.e., unequally) other parcel holders in the annexed area. By defendants' own evidence, this court finds that defendants have identified no permissible state interest which would allow them to survive plaintiffs' motion for summary judgment.

■ Since the only explanation for the refusal to extend sewer service which is offered by defendants cannot count as a legitimate state interest, this court is obli-

---

**9.** This court takes note, once again, of Judge Moon's hypothetical where he opined that, if it would require blasting through rock and cost several million dollars, defendants could exercise some discretion. *See infra.* However, no evidence has been offered which would suggest that the situation in any way begins to approach the extreme hypothetical constructed by Judge

Moon. For all practical purposes, and certainly for the purpose of this case, defendants do not have the discretion to decline to provide sewer service to plaintiffs' parcels on the basis of cost and, thus, the expense involved in the provision of sewer service cannot count as a legitimate or permissible state interest.

gated to determine if there are other conceivable state interests which defendants could advance. The traditional test for assessing the viability of the rational relationship is not only whether the state has articulated a rationale, but whether there is a conceivable basis for a rational relationship. *Exxon Corp. v. Eagerton*, 462 U.S. 176, 103 S.Ct. 2296, 76 L.Ed.2d 497 (1983).[10] This court can construct no possible rationales for defendants' refusal, in the face of a clear court order, to extend the sewer line except for reasons which "constitute[ ] the very sort of parochial discrimination that the Equal Protection Clause was intended to prevent." *Metropolitan Life Insurance Co. v. Ward*, 470 U.S. 869, 878, 105 S.Ct. 1676, 1681, 84 L.Ed.2d 751 (1985). The issue is not the absence of a rational relationship between defendants' denial of sewer service and reasons for that denial— what is missing is a *legitimate* or *permissible* state interest vindicated by that denial.

■ Plaintiffs allege, in effect, that there was a conspiracy among the defendants to provide sewerage to certain parcels for personal benefit and to deny it to plaintiffs. While there is some evidence that this may have been so, the record does not provide the basis for a finding, under Rule 56, that there was invidious discrimination by defendants against plaintiffs because there are disputes regarding issues of material fact which relate to defendants' motivation in providing sewers and the effect of providing the sewer lines to some parcels and not to others. However, it is not necessary to find uncontroverted evidence of a conspiracy by defendants to reduce the value of plaintiffs' parcels or to impermissibly deny to plaintiffs sewer service, for defendants themselves have not been able to identify any permissible state interest to which defendants' decision could bear a rational relationship nor could there feasibly be any such interest, given the strictures placed upon defendants by the annexation orders. It is conceded by this court that state actions are only very rarely struck down on equal protection grounds under the rational relationship standard. Yet, in this case, it is clear to the court that defendants were under such a strictly constructed judicial mandate that the interests to which a rational relationship might ordinarily refer are simply inaccessable to instant defendants. Therefore, this court grants plaintiffs' motion for summary judgment on the basis of a violation of their right to equal protection of the laws and, likewise, denies defendants' motion for summary judgment on this point.

V.

■ Defendants seek summary judgment because they argue that these actions are time barred. They contend that the statute of limitations for § 1983 actions is two years and that, since the sewer lines were required to be installed within five years of the annexation orders and those orders are dated 1976 and 1978, the statute of limitations on the actions would have run in 1983 and 1985 respectively. This court has previously considered the statute of limitations defense offered by defendants and has found that, since there was a continuing wrong, plaintiffs' actions are not time barred. To this extent, the court

10. Thus, the Supreme Court concluded that "[W]e think the Alabama legislature *could have reasonably determined* that the royalty-owner exemption would encourage investment in oil or gas production." *Exxon Corp. v. Eagerton*, 462 U.S. 176, 196, 103 S.Ct. 2296, 2308, 76 L.Ed.2d 497 (1983) (emphasis added). *See also Allied Stores of Ohio v. Bowers*, 358 U.S. 522, 529, 79 S.Ct. 437, 442, 3 L.Ed.2d 480 (1959). By the same token, the Court has also struck down classifications, on the basis of the rational relationship test, when it discerned impermissible purposes behind the classification. *Hooper v. Bernalillo County Assessor*, 472 U.S. 612, 622–23, 105 S.Ct. 2862, 2868–2869, 86 L.Ed.2d 487 (1985) (New Mexico cannot grant a special tax exemption to Vietnam veterans only if they were residents of the state before a certain arbitrary date); *Zobel v. Williams*, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982) (Alaska cannot use length of residency as a differential in distributing dividends from state's oil reserves). As the Court concluded in *Zobel*, the state's objective "to reward citizens for past contributions" cannot count as "a legitimate state objective." 457 U.S. at 63, 102 S.Ct. at 2313. (The Alaska legislature had pointed to two other objectives, but the Supreme Court found that those objectives were not advanced by the legislative scheme and the Court noted that, in upholding the law and applying it retroactively to 1959, the Alaska Supreme Court relied solely on the state interest which was identified as impermissible. *Id.* at 62–63, 102 S.Ct. at 2313–2314.)

reaffirms and adopts its decision and the reasoning supporting that decision in its Order and Memorandum Opinion of February 22, 1988.

## VI.

In conclusion, the court denies defendants' motion for summary judgment on the basis of the qualified immunity defense and grants plaintiffs' motion for summary judgment in finding that defense to be inapplicable. The court grants plaintiffs' motion for summary judgment as to the existence of a compensable taking by defendants, reserving the question of the amount of appropriate damages for trial. As regards plaintiffs' claim of denial of equal protection, this court grants plaintiffs' motion for summary judgment and denies defendants' motion for summary judgment, also reserving for trial the question of damages on this claim. Finally, this court denies defendants' motion for summary judgment on the basis of a statute of limitations defense.

An appropriate Order shall this day issue.