Staunton.

## TOWN OF APPALACHIA V. MAINOUS.

September 20, 1917.

1. MULTIFARIOUSNESS—*Streets—Waiver of Bond of Contractor.*— Complainant in a bill in equity sought to redress a wrong done him as an individual, by the grading of a street in front of his premises, and also an injury to him as a citizen of a municipality, in that the bond required of the contractor for the grading had not been given and that a member of the street committee who was charged with the duty of assessing the damage to his property had an interest in the contract for doing the grading. As a waiver of the contractor's bond was within the discretion of the town council and not a matter of which a citizen could complain, the bill was not multifarious. The mere assertion of a right which the court will not enforce will not render a bill multifarious. The right sought to be enforced was within the discretionary powers of the council, with which the courts will not interfere, and the allegation that a member of the street committee was interested in the contract for grading is a mere incident of the gravamen of the bill and does not render the bill multifarious. As regards multifariousness, each case must be decided on its own facts.

2. STREETS AND HIGHWAYS—*Bond of Contractor—Discretion of Council.*—Whether or not a bond should be required of the contractors for the grading of a street in the first instance is a matter resting entirely within the discretion of the council, and whether, if required, it should thereafter be waived rests equally within their discretion, and is not a matter of which a citizen could complain merely because in its absence a forfei-· ture could not probably be enforced.

3. CERTIORARI—*Distinguished from Other Writs.*—Certiorari is a common-law writ, issued from a superior court directed to one of inferior jurisdiction, commanding the latter to certify and return to the former the record in the particular case. At common law when not ancillary to other process, *certiorari* is in the nature of a writ of error. It has the same functions to inferior tribunals whose proceedings are not according to the course of the common law as the writ of error has to common-

law courts. There is this difference, however, *certiorari* brings up the record for inspection only, while on error the proceedings below are superseded. It differs from appeal in that it brings up the case on the record, while on appeal the case is brought up on the merits; and from mandamus, for by that writ the case is proceeded with in the inferior court, in accordance with the order of the court granting it.

4. CERTIORARI—*Use in Virginia.*—In Virginia there is no statute enlarging the scope of the writ of *certiorari.* Its use must be measured by the common law, and except to transfer a record from an inferior to a superior court, is so rare as to be almost obsolete.

5. EQUITY—*Jurisdiction—Adequate Remedy at Law—Certiorari.*— A property owner claimed that, without his fault, he had been deprived of the appeal given him by a statute by the action of a street committee in overruling, without his knowledge, his objections to the ascertainment of damages to his premises by grading the street in front thereof. Defendants demurred on the ground that complainant had a full, adequate and complete remedy at law by a writ of *certiorari.* As counsel for defendant admitted that the proceedings of the committee and council were regular on their face, and as *certiorari* brings up the record for inspection only, or in order that the court issuing the writ may inspect the proceedings and determine whether there has been any material irregularity therein, the writ would have been of no value to complainant. In such case equity has jurisdiction, and the demurrer was properly overruled.

6. INJUNCTION—*Laches.*—Where a contract for grading a street was executed September 14th, work commenced about September 22d, and an injunction granted September 29th, there was no such unreasonable delay in applying for the injunction as should bar the complainant of relief.

7. STREETS AND HIGHWAYS—*Changing Grade—Ascertainment of Damages to Abutting Owners.*—The statute relating to the change of grade of a street in a town requires the town to give the abutting owner at least ten days' notice of a time and place to be designated in the notice, to show cause, if any he can, against the ascertainment of damages fixed by the committee to ascertain the same. It then provides: "Any one wishing to make objection to such ascertainment, so far as the same affects him, may appear in person or by counsel and state his objections. If his objections are overruled, he may within ten days thereafter, but not afterwards, have an appeal as of right * * * to the circuit court of the county in

which said town is situated." It is further provided that the hearing on the appeal shall be *de novo.* Acts 1912, cl. 160, page 354.

*Held:* That where the owner's objections were never overruled as required by the statute, all proceedings based on the report of the committee of which the owner had neither notice nor knowledge until too late to appeal were null and void.

8. STREETS AND HIGHWAYS—*Changing Grade—Ascertainment of Damages to Abutting Owners.*—A decree of court requiring the council of a town to- ascertain the damages, if any, which may accrue to the complainant by reason of the change of grade of the street in front of his property, and to proceed with all due diligence to grade and fill in the street fronting complainant's property in accordance with grades established by the town and shown by the report of its engineer, and further requiring the town to construct and complete a concrete sidewalk fronting complainant's property in accordance with established grades and in conformity to concrete sidewalks heretofore constructed on said street, is plainly erroneous, as· it infringes upon the discretionary powers of the council.

9. STREETS AND HIGHWAYS—*Grading and Paving Streets—Discretion of Council.*—It is for the council of a municipality to determine in the first instance, what streets it will grade or pave, and what shall be the character of the grading or paving. In matters of this character, the decision of the council is, in the absence of fraud, final and conclusive, and cannot be controlled by the courts, unless the council transcends its powers.

Appeal from a decree of the Circuit Court of Wise county. Decree for complainant. Defendant appeals.

*Reversed in part.*

The Town of Appalachia, desiring to grade certain of its streets and avenues, adopted a resolution June 30, 1914, directing the grading to be done, and designating and directing the street committee of said council, composed of E. L. Crizer, J. M. Cornett, and W. H. Johnson, to proceed by personal inspection of all premises likely to be effected by such grading, and ascertain what damages, if any, would

accrue to the owners of such premises, and thereafter give notice of such ascertainment to such abutting owners, citing them to appear before the committee at a time and place to be specified in the notice to show cause, if any they had, against such ascertainment, and thereafter to make report of its proceedings to the council.

The committee viewed the premises of the appellee, and ascertained that no damage had been done to him, and notified him of a time and place when and where he could appear before the committee and show cause against the ascertainment. The appellee appeared at the time and place mentioned in the notice and stated to the committee his objections to the proposed action of the council. There is a sharp conflict between the witnesses as to what took place before the committee. The appellee contends that no action was taken by the committee, but that the matter was left open for future consideration, and especially for consideration of the proposal made by him to the committee. Upon this phase of the case, the trial judge heard the oral testimony of the witnesses and decided in favor of the appellee. This meeting was held August 3, 1914. Subsequently, on August 18, 1914, the committee filed with the clerk of the council a detailed report, in writing, of all its proceedings, which report the council confirmed, and by resolution accepted a bid of Beverly & Trinkle, for the work of grading, and authorized the mayor of the town to execute a contract with the firm for doing said work, and providing that the firm should execute the usual contractor's bond in the penalty of $1,000. The contract for the grading was executed September 14, 1914, and the contractors commenced the work of grading about September 22, 1914.

On September 29, 1914, the appellee exhibited before the judge of the Circuit Court of Wise county, in vacation, a bill in chancery against the town of Appalachia, the street

committee, and the said contractors, alleging that the afore-
said report of the said street committee, with respect to the
action of said committee in overruling his objections to the
ascertainment of damages to his premises, was untrue and
misleading; that the said street committee did not pass
upon his said objections at the hearing before said commit-
tee on August 3; that he understood that the question was
left open and undecided at said meeting and that it would
be again taken up by said committee at some future day;
and that for these reasons he did not take an appeal from
the alleged judgment of the committee within the ten days
provided by law; that by reason of the premises and with-
out fault on his part, he had been misled by the actions of
said committee and deprived of his day in court. The bill
further alleged that the said Beverly & Trinkle had been
allowed to enter upon said work without having executed
the bond provided by the resolution of the council; that
said Beverly & Trinkle were men of limited means; that
without said bond the town would be unable to collect any
forfeitures that might accrue under the said contract, and
charged that the said contract, for these reasons, was void.
The bill further alleged that E. L. Crizer, a member of the
council of said town and a member of the said street com-
mittee, was directly and indirectly interested in the part-
nership of said Beverly & Trinkle, and in the said contract
between said firm and the town, and charged that by rea-
son of same the said contract was void. The bill further
alleged that great damage and irreparable injury would be
caused to the complainant's said premises by the grading of
said street, and prayed for the said contract to be declared
void; for defendants to be enjoined from further proceed-
ing with said work; for all the proceedings of the said street
committee, and its report with reference to its ascertain-
ment of damages to complainant's property, and the pro-
ceedings of the council with reference thereto to be set·

aside; for a commissioner to be appointed to ascertain and report as to the damages to complainant's property; for the said street committee to be ordered and compelled to make a personal inspection of complainant's property, and ascertain and assess the damages occasioned thereto by the grading of said street, and for the complainant to be allowed to take an appeal from its finding, should he desire, or for the complainant to be now allowed an appeal from the alleged judgment of the said street committee; and for general relief.

Upon the presentation of said bill, the judge granted a temporary injunction, enjoining and restraining defendants from further proceeding with the work of grading said street.

The defendants demurred to and answered the bill, and after notice to appellee, made a motion before the said judge to dissolve the said injunction, which motion was heard on the 3rd day of October upon the bill of complaint, the separate demurrers and answers of defendants, and the oral testimony of witnesses. Upon the hearing of said motion the said demurrers were overruled, and the injunction was dissolved, with the exception of that portion of Kilbourn avenue immediately in front of appellee's premises, and as to said portion the said injunction was made permanent; the decree rendered upon said hearing being entered at the next term of said circuit court, on October 20.

The cause came on for hearing at the January, 1916, term of the said circuit court, upon the bill, the several answers, a copy of the evidence given before the judge in vacation, and the depositions of witnesses, and a final decree was rendered on the 16th day of January, 1916, setting aside the proceedings of the street committee in the ascertainment of damages to appellee's premises, and all subsequent proceedings of the said committee and the council of

said town with reference thereto, upon the ground that said proceedings were irregular, informal and illegal; and requiring the council of said town, within sixty days, to proceed to designate and direct some committee thereof, or some officer of said town, to proceed to ascertain and assess the damages to appellee's premises by reason of the grading of said avenue, in accordance with the provisions of chapter 217 of Acts of 1908, as amended by Acts 1912, p. 354; and further requiring the said town, after such ascertainment of damages to proceed with all due diligence to fill in and grade the avenue in front of said premises in accordance with the grade established therefor, and in accordance with the original resolution adopted by the council on June 30, and to construct concrete sidewalks in front of said premises in conformity with concrete sidewalks theretofore constructed on said avenue; and decreeing costs against petitioners. From that decree this appeal was taken.

*C. R. McCorkle,* for the appellant.

*Morton & Parker,* for the appellee.

BURKS, J., (after making the foregoing statement) delivered the opinion of the court.

There was a demurrer to the bill and several grounds of demurrer were assigned, but only two of them are relied on in this court, to-wit: Multifariousness, and that the plaintiff has a full, adequate and complete remedy at law.

It is insisted that the bill is multifarious because the complainant seeks to redress a wrong done to him as an individual and also an injury to him as a citizen of the town of Appalachia, and that the two cannot be united in one bill.

An inspection of the bill will show that, as to the injury to the complainant as a citizen, the charge is that the bond required of the contractor had not been given, and that a member of the street committee who was charged with the duty of assessing the damage to his property had an interest in the contract for doing the grading. Whether or not a bond should have been required of the contractors in the first instance was a matter resting entirely within the discretion of the town council and whether it should be thereafter waived rested equally within their discretion, and was not a matter of which a citizen could complain merely because in its absence a forfeiture could not probably be enforced. The mere assertion of a right which the court will not enforce will not render a bill multifarious. The right sought to be enforced was within the discretionary powers of the council, with which the courts will not interfere. 1 Dillon Mun. Corp. (4th ed.), sections 94, 95. The allegation that the member of the street committee was interested in the contract for grading is a mere incident of the gravamen of the bill and does not render the bill multifarious. The law relating to multifariousness has been so repeatedly stated by this court, and especially that each case must be decided on its own facts, that it is not deemed necessary to do more than cite a few of the more recent cases. *Fulton* v. *Cox,* 117 Va. 669, 86 S. E. 133; *Baker* v. *Berry Hill Co.,* 109 Va. 776, 65 S. E. 656; *Garrett* v. *Finch,* 107 Va. 25, 57 S. E. 604; *Jordan* v. *Liggan,* 95 Va. 616, 29 S. E. 330; *School Board* v. *Farish,* 92 Va. 156, 23 S. E. 221; *Spooner* v. *Hilbish,* 92 Va. 333, 23 S. E. 751; *Hill* v. *Hill,* 79 Va. 592.

The second ground of demurrer relied on is that the complainant had a full, adequate and complete remedy at law by (1) ordinary action for damages, or (2) a writ of *certiorari.* The first of these grounds is abandoned by counsel for the appellants in his reply brief in the following language: "Counsel for the appellee are probably correct in

their position that the matter became *res judicata* upon the expiration of the time for appeal, the proceedings of the committee and council being regular upon their face, and I therefore yield this point." The proceedings being regular on their face, it would seem that the matter in controversy was equally *res judicata* whether the party aggrieved proceeded by an ordinary action at law or by *certiorari.* We have no statute enlarging the scope of the writ of *certiorari*, and its use except to transfer a record from an inferior to a superior court, is so rare as to be almost obsolete. Its use, therefore, must be measured by the common law.

The writ is defined and distinguished from other writs in 6 Cyc. 737 as follows: "*Certiorari* is a common-law writ, issued from a superior court directed to one of inferior jurisdiction, commanding the latter to certify and return to the former the record in the particular case. At common law when not ancillary to other process, *certiorari* is in the nature of a writ of error. It has the same functions to inferior tribunals whose proceedings are not according to the course of the common law as the writ of error has to common-law courts. There is this difference, however, *certiorari* brings up the record for inspection only, while on error the proceedings below are superseded. It differs from appeal in that it brings up the case on the record, while on appeal the case is brought up on the merits; and from *mandamus*, for by that writ the case is proceeded with in the inferior court, in accordance with the order of the court granting it. In some of the States the statutory writ of review is a substitute for *certiorari*, and sustains substantially the same relation to the Code procedure as the writ of *certiorari* does to the common-law practice."

Much to the same effect are Prof. Minor and Mr. Barton: 4 Min. Inst. (3d ed.), pt. II, p. 1372; 2 Barton's Law Pr. (2d ed.), p. 1235.

If, as stated in Cyc., *supra, "certiorari* brings up the record for inspection only," or, as stated by Minor, *supra,* the writ is issued "in order that the court issuing the writ may inspect the proceedings and determine whether there has been any material *irregularity* therein," and counsel admit, as he does, that the "proceedings of the committee and counsel are regular on their face," it is not perceived that the writ would have been of any value to him. The ground of the equity jurisdiction alleged in the bill was, that the complainant, without fault on his part, had been deprived of the appeal given him by statute by the misconduct of the defendants in failing to let him know that his claim for damages had been rejected by the committee. In such case equity has jurisdiction, and the demurrer was properly overruled. *Louisville, etc., R. Co.* v. *Taylor,* 93 Va. 226, 24 S. E. 1013; *Rosenberger* v. *Bowen,* 84 Va. 660, 5 S. E. 697; *Dey* v. *Martin,* 78 Va. 1.; *Holland* v. *Trotter,* 22 Gratt. (63 Va.) 136.

As the complainant could not, for the reason stated, maintain an action at law to recover the damages alleged to have been sustained by him, he would have been without remedy altogether had not equity intervened, and the court committed no error in overruling the motion to dissolve the injunction on October 3, 1914. Neither was there any such unreasonable delay in applying for the injunction as should bar the complainant of relief. The contract for the grading was executed September 14, work commenced about September 22, and the injunction was granted September 29.

On the motion to dissolve the injunction, the trial court heard the testimony orally in chambers, and this testimony is certified in the record as a part of the evidence in the cause. It related chiefly to what transpired before the street committee when the complainant was notified to appear before them to show cause, if any he could, against the

finding of the committee that he was not damaged by the proposed improvement. Six witnesses were examined on this subject, and their testimony is of the most conflicting character. These witnesses were the three members of the street committee, the mayor of the town, the complainant and one disinterested witness, J. B. Whitehead. Witnesses on behalf of the town insist that the complainant fully understood that they overruled his claim for damages, and yet none of them say he was told so in so many words, but only that he was insisting on having the grade lowered, or that he be paid for filling his yard to the proposed grade, and that they told him they could not or would not do that. They regarded that as settling the matter. On the other hand, the complainant insisted that no final action was taken by the committee; that he was led to believe that the matter would be taken up again, and that he would have a further opportunity of presenting his views, and in the event of an adverse decision he could exercise his right of appeal. He further testified that he had retained counsel to represent him in the event of an adverse decision, and that after the meeting of the committee he had time and again applied to the chairman to know what had been done and was each time assured that the matter was still unsettled, and that not until after it was too late for him to appeal did he learn that an adverse report had been made by the committee. Whitehead, the only disinterested witness on the subject, testified that the committee did not tell the complainant that he was not damaged, or that they had overruled his objection. He was asked and answered questions as follows: "What was done, if anything? Nothing done; all left the room and the street committee went with him (referring to a citizen who had come in and made complaint of water from the street overflowing his property) where this water was. Did they pass on any question of damages to Mr. Mainous' property or to the citation against

him? No, sir." With the witnesses before him testifying in person, the trial judge decided that the committee did not at their meeting overrule the objection of the complainant to their report, or take any other final action thereon, and that he had no notice of their adverse finding until after the expiration of the time given by the statute in which to appeal. There was ample evidence to sustain this finding, and it will not be disturbed, even though, upon the evidence as it appears in the record, we may think that the apparent weight of the evidence is against it.

The statute relating to the change of grade of a street in a town requires the town to give the abutting owner at least ten days' notice of a time and place to be designated in the notice, to show cause, if any he can, against the ascertainment of damages fixed by the committee to ascertain the same. It then provides: "Any one wishing to make objection to such ascertainment, so far as the same affects him, may appear in person or by counsel and state his objections. If his objections are overruled, he may within ten days thereafter, but not afterwards, have an appeal as of right * * * to the circuit court of the county in which said town is situated." It is further provided that the hearing on the appeal shall be *de novo*. Acts 1912, cl. 160, p. 354. The trial court found that the owner's objections were never overruled as required by the statute, and that all proceedings based on the report of the committee of which the owner had neither notice nor knowledge until too late to appeal were null and void. This finding of the trial court is approved.

The decree appealed from, however, goes further and requires the council of the town to first ascertain the damages, if any, which may accrue to the complainant by reason of the change of grade of the street in front of his property, and to proceed with all due diligence to grade and fill in the street fronting complainant's property in accordance with

grades established by the town and shown by the report of its engineer, and further requires the town to construct and complete the concrete sidewalk fronting complainant's property in accordance with established grades and in conformity to concrete sidewalks heretofore constructed on said street. This portion of the decree is plainly erroneous. It infringes upon the discretionary powers of the council. It is for the council to determine in the first instance, what streets it will grade or pave, and what shall be the character of the grading or paving. In matters of this character, the decision of the council is, in the absence of fraud, final and conclusive, and cannot be controlled by the courts, unless the council transcends its powers. 1 Dillon Mun. Corp. (4th ed.), section 94, and cases cited.

The injunction awarded the appellee in this cause should be now dissolved, and if the town of Appalachia desires to complete its improvement in front of appellee's property, it can do so on compliance with the statute above mentioned, and the rights of the appellee can be fully protected in that proceding. If, however, the town should elect to proceed no further with its improvement, and the appellee has sustained any damage by reason of the grading already done, the way is open to him to maintain his action therefor as he is no longer barred by the action of the council which has been declared null and void.

A decree will be entered in this court dissolving said injunction and dismissing the complainant's bill, but without prejudice to the right of the town of Appalachia to proceed under the statute to complete its improvement, and, if it fails to do so, without prejudice to the right of the appellee to maintain his action for damages aforesaid. Costs will be decreed to the appellee as the party substantially prevailing.

*Reversed in Part.*