## Richmond

CITY OF STAUNTON

v.

ROBERT W. CASH, ET AL.

February 29, 1980.

Record No. 771632.

Present: I'Anson, C.J., Carrico, Harrison, Poff, and Compton, JJ.

*Benham M. Black, City Attorney,* for appellant.

*John W. Sills, III (Wayt B. Timberlake, Jr.; Timberlake, Smith, Thomas & Moses,* on brief), for appellees.

*Amicus Curiae: Virginia Municipal League. William A. Young, Jr. (Howard W. Dobbins; Robert D. Perrow; Wallerstein, Goode & Dobbins,* on briefs), for appellees.

PER CURIAM.

By petition filed against the City of Staunton, Robert W. Cash and Janet H. Cash alleged that the City had wrongfully denied them a permit to construct a dwelling on two residential lots they owned in a subdivision located in Staunton. In the petition, the Cashes prayed for a declaratory judgment establishing their right to con-

struct the dwelling and to use a dedicated but unpaved street upon which the lots abut. After a hearing, the trial court held (1) that the Cashes were entitled to a building permit, and (2) that the City should accept into its street system and widen, surface, improve, and maintain the street in question. In this appeal, the City challenges both rulings of the trial court.

The site upon which the Cashes desire to build is comprised of lots 9 and 10, block 12, Beverley Grove Subdivision. This subdivision was created in 1927 in an area then located outside city limits in Augusta County. The plat of subdivision shows that the Cashes' lots abut the westerly side of Mason Street, north of its intersection with Tyler Street.

Between 1927 and 1947, lots in the subdivision were sold, and dwellings were constructed on some of the lots. In 1947, an area including the subdivision was annexed by the City pursuant to an annexation decree effective December 31 of that year. Following annexation, additional dwellings were constructed in the subdivision, and certain streets or portions thereof were improved and accepted into the City's street system.

Improved and accepted was a portion of Mason Street lying south of its intersection with Tyler Street. The portion of Mason Street in question here, however, has been improved only by the surfacing, with a thin layer of gravel and asphalt, of a strip varying in width from 4.8 feet to 13 feet. This strip was installed by the City in 1958 as a walkway for children attending an elementary school located to the north of Beverley Grove Subdivision.

The Cashes purchased one of the lots in question in 1963 and the other in 1972. In February, 1976, they applied to the City for a permit to erect a dwelling on the lots. The City denied the application on the ground that the proposed construction "[d]oes not meet the requirements of Zoning Code Reference Art. V, Sec. 4, C, 7."

The section referred to in the denial is part of the City's zoning code, which became effective in November, 1969, and was amendatory of an earlier code. The section states that "[n]o dwelling shall be erected on a lot which does not abut on at least one street for at least thirty (30) feet." While each of the Cashes' lots abuts Mason Street for more than the required 30 feet, the City denied the request for a building permit because the street was unimproved.

In granting relief to the Cashes, the trial court found that the portion of Mason Street lying north of its intersection with Tyler was a public street. Relying upon this finding, the Cashes contend that they were entitled to a permit authorizing them to build on the lots not-

withstanding the unimproved condition of the street. On the other hand, the City contends that the portion of Mason Street in question is not a public street, that it is only a "paper street" improved as a walkway for schoolchildren, and that, because it is otherwise unimproved, it is insufficient to qualify as a street under the zoning code and to entitle the Cashes to a building permit.

■ We believe that the trial court correctly held that the portion of Mason Street in question is a public street. The recordation of the subdivision plat in 1927 was an offer to dedicate to public use the streets shown thereon. Acceptance of an offer of dedication may be accomplished either by express resolution or by implication. *City of Norfolk* v. *Meredith*, 204 Va. 485, 491, 132 S.E.2d 431, 435 (1963).

The record is silent on the question whether the offer to dedicate was accepted by Augusta County prior to the 1947 annexation. The record is clear, however, that, following annexation, while the City did not by express resolution accept the offer to dedicate the disputed portion of Mason Street, it did accept into its street system a portion of Mason lying south of Tyler Street, and it did install the walkway on the portion of Mason Street lying north of Tyler. By these acts, the City impliedly accepted the dedication of Mason Street in its entirety. *Ocean Island Inn* v. *Virginia Beach,* 216 Va. 474, 479, 220 S.E.2d 247, 252 (1975); *Greenco Corp.* v. *Virginia Beach,* 214 Va. 201, 208, 198 S.E.2d 496, 501 (1973).

■ But it does not follow that, because their lots abut what, in a technical sense, is a public street, the Cashes were entitled to a permit authorizing them to build notwithstanding the unimproved condition of the street.* As has been noted, the zoning code requires that a lot abut a "street" to qualify as a building site. In the definitional portion of the code, the term "street" is defined as "[a] public thoroughfare which affords the principal means of access to abutting property." And, one of the stated purposes of the zoning code is "to facilitate adequate provision of streets and highways."

Given these considerations, we believe that the terms "street" and "public thoroughfare," as employed in the zoning code, connote something significantly greater than a street marked off by lines on a plat and improved physically only by the installation of a walkway for schoolchildren. *See Jones* v. *Williamsburg,* 97 Va. 722, 724, 34 S.E.

---

*It was stipulated below that the portion of Mason Street in question has never been accepted into the City's street system. Obviously, the parties recognized the important distinction between the rights and obligations that flow from the mere acceptance of an offer to dedicate a street to *public use,* on the one hand, and, on the other, the acceptance of a street into the City's *street system.*

883, 883 (1900). We believe that the terms require a street open to the use of the public as a whole and so improved that it can safely and conveniently accommodate the vehicular and pedestrian traffic generated in the area where it is located.

Because the portion of Mason Street in question was not so improved, it did not qualify as a "street" within the meaning of the zoning code. The City was justified, therefore, in refusing on that ground to issue the Cashes a building permit.

■ The Cashes argue, however, that thus to apply the zoning code and deny them a building permit would be violative of their constitutional rights. On brief, the Cashes express their constitutional arguments in both due process and equal protection terms. In oral argument, the Cashes pressed only the due process point. We will not mention further the claimed denial of equal protection, therefore, except to say that the denial is not supported by the record.

The Cashes' due process argument does not proceed from the premise that the City is without authority to require that a lot abut an improved street before the owner may become entitled to a building permit. Rather, the argument is based upon the proposition that to impose such a requirement upon the Cashes would unlawfully deprive them of a vested right. They acquired their property, the Cashes say, "at substantial expense as residential building lots relying on the status of Mason Street as an existing publicly dedicated street." In this set of circumstances, the Cashes assert, they acquired a vested right to use Mason Street for access to their lots. If the street is now declared not a street within the meaning of the zoning code, the Cashes maintain, then they have been denied the right to use the street for access to their property and thus have been effectively deprived of "all use and value" of the lots.

It is true, as the Cashes' argument imports, that one who purchases and receives a conveyance of lots by reference to a recorded plat of subdivision acquires, as appurtenant to his purchase, the right to the use of an easement in such streets shown on the plat as are " 'necessary to the enjoyment and value of said lots.' " *Fugate* v. *Carter*, 151 Va. 108, 112, 144 S.E. 483, 484 (1928). But the mere refusal of a building permit did not affect any rights of access the Cashes acquired by their purchase. Those rights remained as effective after the permit refusal as they were before; the easement in Mason Street existed unaltered; and the street continued unchanged as a "publicly dedicated street."

Thus, the Cashes have suffered no loss of a vested right and cannot show a deprivation of "all use and value" of their lots. For these

reasons, the cases of *Fairfax County* v. *Medical Structures*, 213 Va. 355, 192 S.E.2d 799 (1972), and *Boggs* v. *Board of Supervisors*, 211 Va. 488, 178 S.E.2d 508 (1971), relied upon by the Cashes, are inapposite.

■ We hold that the Cashes were not entitled to a permit which would have authorized them to build notwithstanding the unimproved state of the street upon which their lots abut. This brings us to the question whether the City was under a duty to improve the street so as to entitle the Cashes to a building permit.

As a general rule, the decision whether to open and improve a particular street is a matter within the legislative discretion of the governing body of a municipality. In the absence of fraud, collusion, or a clear abuse of discretion, the municipality's decision will not be disturbed by the courts. *Appalachia* v. *Mainous*, 121 Va. 666, 678, 93 S.E. 566, 570 (1917). *See City of Lynchburg* v. *Peters*, 145 Va. 1, 13, 133 S.E. 674, 678 (1926).

The Cashes do not question the correctness of this rule or suggest that the City's refusal to open and improve the street upon which their lots abut was the result of fraud or collusion. The Cashes argue, however, that in this case the 1947 annexation ordinance, as ratified and approved by the annexation decree, imposed upon the City an absolute, non-discretionary duty to improve the street. This type of duty was imposed, the Cashes assert, by that portion of the annexation ordinance and decree which provided that the City should "with all reasonable dispatch afford and furnish . . . public facilities and improvements to [the citizens residing in the annexed territory], as provided by law."

While the annexation decree clearly imposed upon the City a duty to make improvements in the annexed area, we do not agree that the duty was of the absolute nature asserted by the Cashes. The decree did not require the City to make any particular improvement at any given time. Expressing in general terms the duty imposed, the decree left to the City, in the exercise of discretion, the determination of what improvements should be made and when they should be accomplished. The decree contemplated that, in exercising this discretion, the City properly should consider the public necessity of proposed projects and the economic feasibility of suggested undertakings. The decree, therefore, provided no basis for the Cashes' claim that the City should improve the street so as to entitle the Cashes to a building permit.

■ Finally, the Cashes argue that the City's failure to open and improve the street in question "constitutes an obstruction [of access

to their lots] which the City is maintaining." This obstruction, the Cashes assert, is violative of the rule enunciated in *Town of Galax* v. *Waugh,* 143 Va. 213, 237, 129 S.E. 504, 511 (1925), to the effect that a "city or town has no right to obstruct its street so as to deprive the property owner of free access to and from his property abutting thereon."

We find this argument unpersuasive. We do not believe that the failure to open and improve a street can be equated with the physical obstruction of an existing street. Because no obstruction of any kind is involved here, *Waugh* is inapposite.

We hold that the trial court erred in ruling that the Cashes were entitled to a building permit and that the City should open and improve the portion of Mason Street in question. Accordingly, the order appealed from will be reversed, and the Cashes' petition for declaratory judgment will be dismissed.

*Reversed and dismissed.*