PRESENT: All the Justices

JOSHUA ADAM ECKARD

OPINION BY
v. Record No. 230333
JUSTICE D. ARTHUR KELSEY
AUGUST 1, 2024

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

A jury convicted Joshua Adam Eckard of 12 counts of possession of child pornography in violation of Code § 18.2-374.1:1(A)-(B). He unsuccessfully appealed his convictions to the Court of Appeals on multiple grounds, including that the circuit court erred by denying his motion to set aside the jury verdict for alleged juror misconduct. Limiting our review to this issue and to the record presented to the Court of Appeals, we affirm.

I.
A.

After a jury found Eckard guilty, Eckard filed a "Motion to Set Aside Jury Verdict" based upon a claim that a juror had intimidated another juror into voting to convict. In his motion, Eckard stated:

> Within a few hours of the verdict, a juror notified the Sheriff that during deliberations the juror changed his vote to guilty due to a perceived threat. An email authored by an employee of the sheriff's office addressed to the sheriff indicates the call from the juror was placed at 1:26 a.m. on October 1, [2]021.

2 J.A. at 84.[1]

Attached to the motion were two exhibits. The first exhibit was an email from a clerk in the Augusta County Sheriff's Office to the Sheriff, which relayed that a juror "called this

---

[1] We sealed the second volume of the Joint Appendix. To the extent that this opinion mentions facts found in the sealed record, only those specific facts have been unsealed because they are relevant to the decision in this case. The remainder of the previously sealed record remains sealed.

morning to report that he was very disturbed by a court process that he was involved in 9/30/21. He said that he felt threatened, and was threatened in the bathroom, and felt like he had to vote the way of the majority." *Id.* at 87.[2] The juror making the call, the clerk also recounted, "talked endlessly about the trial process and was upset that a 2-day trial had been turned into a one day trial where the jury was forced to stay late in the evening." *Id.* The juror had also "complained that the judge only gave them one break the entire day." *Id.*

The second exhibit was a letter from the Sheriff to the juror making the call. In the letter, the Sheriff stated:

> I have made several attempts to reach you by phone in regards to your complaint about the jury trial that you participated in on September 30, 2021. I would like to speak with you about your concerns. Please call my office and let me know when you are available for a meeting. I can come to you or you can come into the Sheriff's Office so that we can discuss this matter.

*Id.* at 88. Although the record states that the letter was "hand delivered" to the juror, *id.*, Eckard did not allege that the juror ever responded in person, by phone, or by mail to the Sheriff's effort to follow up on the juror's claim.

Based upon these two exhibits, Eckard's motion concluded: "The Defendant, therefore, moves this Court to set aside the jury verdicts in this case and schedule this matter for further proceedings." *Id.* at 84. The motion did not expressly request an evidentiary hearing on the motion. The need for "further proceedings" apparently meant scheduling a new trial upon granting vacatur of the jury verdicts. Through a judicial assistant, however, the trial court suggested that all counsel provide available dates for a hearing to address the pending motion. The trial court later changed its mind, advising counsel that the court "no longer needs to meet

---

[2] In the Court of Appeals, Eckard characterized the bathroom as part of the "jurors' area" that included the jury room, an anteroom or hallway, and a bathroom used exclusively by jurors during deliberations. *See* CAV Oral Argument Audio at 9:50 to 10:20.

with you both." *Id.* at 90. The trial court thereafter quashed any subpoenas previously issued and entered an order denying the motion, holding that the allegations did not justify vacatur of the jury verdicts and did not warrant any judicial intrusion into the jury's decision-making process. At a later sentencing hearing, Eckard requested leave "to submit a written proffer on the issue with regard to the motion previously filed." 1 *id.* at 52. The trial court entered no orders acknowledging any later-filed written proffer or addressing whether it warranted reconsideration of its earlier denial of the motion to set aside the verdict.

B.

Eckard appealed the trial court's ruling to the Court of Appeals. After the trial court transmitted the digital record to the Court of Appeals, the Court of Appeals sent a notice to both Eckard and the Commonwealth that the record had been received. In this notice, the Court of Appeals provided a link through which Eckard and the Commonwealth could download the digital record. The notice instructed them to "be sure to download the record" as the "link will expire in 60 days." CAV R. at 7.[3]

In his opening brief before the Court of Appeals, Eckard stated that he had "proffered to the trial court" a written statement of anticipated witness testimony. *Id.* at 26. This written proffer, the brief stated, provided a more detailed account of what Eckard believed the allegedly intimidated juror would have said if called to testify at an evidentiary hearing. Eckard also stated that the Sheriff would authenticate the exhibits that Eckard had attached to his earlier motion. Eckard's brief cited "R. 294" in the trial court record as the place where this written proffer

---

[3] Notably, this 60-day window to download the digital record provided ample time for Eckard to obtain the digital record and use it in drafting his opening brief, which, as the notice reminded the parties, was "due no later than 40 days after the record is received by the Court of Appeals." CAV R. at 7.

3

could be found.  *Id.* at 27.  In its response brief, the Commonwealth stated that page 294 of the record

> includes only the trial court's one-page order denying the motion. The order did not reference any proffer, nor did Eckard's motion, nor did the emails between the trial court and counsel regarding setting a hearing on the motion.  Because the proffer is not part of the trial record and is not shown to have been made to the trial court, it is not before this Court.

*Id.* at 62.  Eckard did not file, as was his right, a reply brief contesting the Commonwealth's assertion.

A panel of the Court of Appeals asked Eckard's counsel during oral argument about the location of the written proffer in the record.  Counsel replied:  "We were required to file proffers, [and] it's my understanding that they did not make it to the record in this court."  CAV Oral Argument Audio at 13:13 to 13:19.  The panel inquired about Eckard's citation in his brief to "R. 294" as the place in the record where the written proffers could be found.  "I looked on 294 for that," a panel judge stated, "and could not find it."  *Id.* at 13:19 to 13:21.  "Yes, I could not find it either," Eckard's counsel replied.  *Id.* at 13:22 to 13:23.  In response, the Commonwealth contended that "the proffer cannot be given any weight at this point in the proceeding; it's not part of the record," and thus "it's not before this Court, and it's not entitled to any weight in this court's consideration."  *Id.* at 21:13 to 21:45.

In its unpublished opinion, the Court of Appeals observed that "a motion to set aside a verdict for juror misconduct is addressed to the sound discretion of the trial court and, unless there has been an abuse of that discretion, the judgment below will not be reversed on appeal." *Eckard v. Commonwealth*, Record No. 0218-22-3, 2023 Va. App. LEXIS 171, at *17 (Mar. 14, 2023) (quoting *Caterpillar Tractor Co. v. Hulvey*, 233 Va. 77, 82 (1987)).  The Court of Appeals answered that abuse-of-discretion question by focusing solely on Eckard's motion and the two exhibits attached to it.  As for Eckard's later written proffer, the Court of Appeals stated:

4

On appeal, Eckard asserts that he provided a detailed proffer to the trial court of the evidence he would have presented at a hearing. However, the record before us on appeal does not support his assertion. Despite apparently quoting a bit of its language in his brief, Eckard's proffer is simply not in the record before this Court — either at the page to which Eckard cites or anywhere else.

*Id.* at *15. The Court of Appeals acknowledged that the trial court gave Eckard permission to submit a written proffer. But because "the record on appeal does not contain any such written proffer," *id.* *15 n.4, the Court of Appeals did not consider it.

The Court of Appeals then held that the trial court did not abuse its discretion in denying Eckard's motion to set aside the jury verdict. "Eckard's motion," the Court of Appeals observed, "alleges conduct that at best only amounts to internal discord between two jurors, and 'there is no requirement that a jury arrive at a verdict without discord.'" *Id.* at *19 (citing *Bethea v. Commonwealth*, 68 Va. App. 487, 507 n.12 (2018), *aff'd*, 297 Va. 730 (2019)). Reviewing the sparse information in the motion and attached exhibits, the Court of Appeals explained:

According to the record before us, the trial court was only presented with a juror's vague allegation that he felt threatened while inside the courthouse and evidence from the sheriff's office indicating that the juror called after going home that night and reported the alleged incident in a courthouse bathroom — along with extensive complaints about trial scheduling and about the jury not receiving enough breaks during trial. Eckard's claim lacks detail, and his own motion to set aside the verdict described the event as a 'perceived threat' rather than an actual threat. Vague allegations that a juror was, or felt, threatened by another juror inside the courthouse do not nullify a jury verdict because they are not external influences or threats. In short, all we have in the record before us is a second-hand account of a vague threat allegedly made in a courthouse bathroom. The complaining juror did not name the other juror who supposedly threatened him — and never followed up with the Sheriff after leaving him a message despite the Sheriff's numerous attempts to contact the complaining juror to gain more details.

*Id.* at *18. Given this information and the absence of any "real proffer of any details of what the juror claimed happened," the Court of Appeals held, "reasonable jurists could certainly at least

5

differ about whether to deny Eckard's motion to set aside the jury verdict." *Id.* at *20.[4] Eckard then appealed to this Court.

C.

Eckard's petition for appeal in this Court again erroneously cited "R. 294" for language directly quoted from his written proffer to the trial court. Pet. for Appeal at 20 & n.18. Shortly after we granted Eckard's petition for appeal solely on the assignment of error challenging the denial of his motion to set aside the jury verdict based on juror misconduct, Eckard filed a petition for writ of certiorari. Eckard's counsel stated that "[u]pon inspection of the record on appeal," he had "found that certain items he intended to designate for inclusion in the Appendix were not included in the record before the Court of Appeals." Am. Pet. Writ Cert. at 2. The "certain items" were his written proffer and the Commonwealth's objection to it, which were not previously transmitted as part of the digital record sent to the Court of Appeals. *Id.* at 2-3. These documents were included in an amended trial court record transmitted to this Court by the trial court the day before the petition for writ of certiorari was filed.

The Commonwealth objected to the petition for writ of certiorari as violative of Rule 5:15(a), which states: "In cases on appeal from the Court of Appeals and those certified for review, the record in this Court consists of the record as filed in the office of the clerk of the Court of Appeals and, in addition, all other documents relating to the case which have been filed in the office of the clerk of the Court of Appeals, including any opinion or memorandum decision in cases decided by the Court of Appeals." Because Eckard untimely presented

---

[4] In a concurring opinion, Judge Ortiz agreed with the majority that "[t]he record does not contain Eckard's alleged proffer" and added that "the juror's complaint was vague and contained no reports of an actual threat, the juror failed to respond to repeated efforts to contact him, and the jury verdict was confirmed after polling twice." *Eckard*, 2023 Va. App. LEXIS 171, at *24 (Ortiz, J., concurring).

documents from a record that was not properly before this Court, the Commonwealth argued that this Court should not rely on them in deciding this case.

Eckard's opening brief to this Court addressed the sole assignment of error granted for our review: "The Court of Appeals erred when it affirmed the trial court's summary denial without a hearing of the Motion to Set Aside the Jury Verdict based on an allegation of juror misconduct." Appellant's Br. at 2. Eckard's argument in support of this assignment of error covers approximately two-and-a-half pages. As he did in the Court of Appeals and in his initial petition for appeal to this Court, Eckard's brief quotes from the written proffer that included more details than his earlier motion and exhibits that were properly part of the record on appeal. His brief does not mention, however, the refusal of the Court of Appeals to consider the written proffer that he had earlier conceded was not in the record before the Court of Appeals.

In its response brief, the Commonwealth directly addresses the issue that Eckard ignores and concludes that for several reasons, we should deny Eckard's belated attempt to add documents to the record that were previously omitted from the record transmitted to the Court of Appeals. As was true before that court, Eckard chose not to file a reply brief addressing the Commonwealth's arguments that his attempt to add documents to the record came too late.

II.

A.

The unusual background of this case initially presents us with the question whether the written proffer and the Commonwealth's objection to it can be considered at this stage of the case. For several reasons, we cannot consider them.

As the Commonwealth correctly states, Rule 5:15(a) provides, in relevant part, that in cases appealed to us from the Court of Appeals, "the record in this Court consists of the record as filed in the office of the clerk of the Court of Appeals." The record filed in the Court of Appeals

7

did not include Eckard's written proffer. His counsel should have discovered this fact prior to filing his opening brief in the Court of Appeals. That brief quotes from the written proffer but instead erroneously cites the page number in the digital record that corresponds with the court's order denying the motion to set aside the verdict, not the later-filed written proffer, because the written proffer was absent from the digital record.

At no point prior to or after oral argument in the Court of Appeals, or at any time before the mandate was issued, did counsel make any effort to ensure that the appellate record was complete — even though members of the panel pointed out the omission and counsel openly acknowledged it. "We have many times pointed out that on appeal the judgment of the lower court is presumed to be correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of." *Justis v. Young*, 202 Va. 631, 632 (1961). "If the appellant fails to do this, the judgment will be affirmed." *Id.* Given this responsibility, the appellant cannot simply assume that anything and everything that he has filed in the circuit court has been included in the record transmitted to the Court of Appeals.[5]

---

[5] *See, e.g.*, *Galumbeck v. Lopez*, 283 Va. 500, 507-08 (2012) (refusing to consider an assignment of error regarding an evidentiary issue because appellant had failed to present a sufficient record for review when the proffer and relevant discussions "were held off the record in a sidebar conference"); *Commonwealth Transp. Comm'r v. Target Corp.*, 274 Va. 341, 348-49 (2007) (refusing to consider the admissibility of unredacted documents because appellant had failed to make a proffer of the documents without redactions as a part of the record); *Commonwealth v. Williams*, 262 Va. 661, 669 (2001) (refusing to consider a transcript because the appellant had "failed to include [it] on appeal to the Court of Appeals"); *Anderson v. Commonwealth*, 251 Va. 437, 439 (1996) (refusing to consider the merits of an assignment of error because appellant had failed to make relevant prior criminal proceedings part of the record); *Godfrey v. Commonwealth*, 227 Va. 460, 465 (1984) (refusing to consider a letter between Godfrey's counsel and the trial judge "related to this case and to another criminal case," which "was not transmitted by the clerk below to the Clerk of this Court," and "[a] writ of certiorari was not requested"); *Waskey v. Lewis*, 224 Va. 206, 212 (1982) (refusing to disturb a factual finding of the trial court when appellant failed to introduce a relevant document into the evidence that appellant had referred to and had presented at the trial).

Having not filed a reply brief in either the Court of Appeals or this Court, Eckard has yet to respond in briefing to the Commonwealth's argument about the inadequacy of the appellate record and his exclusive duty to seek to correct it. Instead, he appears content to rely solely on his petition for writ of certiorari. The only legal authority he cites in that petition is Rule 5A:7, which governs the Court of Appeals, and Code § 8.01-673, which generally authorizes writs of certiorari. Eckard's unspoken assumption appears to be that we have the authority to issue a writ of certiorari to the trial court and that he has a right to expect that we grant it in this case.

Eckard is correct about the first assumption but incorrect about the second. Code § 8.01-673(A) codifies an ancient writ issued by common-law courts. "Certiorari is an extraordinary remedy resorted to for the purpose of supplying a defect of justice in cases obviously entitled to redress and yet unprovided for by the ordinary forms of proceedings." Martin P. Burks, Common Law and Statutory Pleading and Practice § 202, at 332 (T. Munford Boyd ed., 4th ed. 1952). Though historically the writ applied to all manner of defects in lower court "cases where the procedure [was] not according to the course of the common law," modern Virginia practice has employed the writ only "to obtain a fuller or more perfect record when a complete record has not been furnished." *Id.*[6]

---

[6] The roots of this writ can be traced back to England where "[t]he formal way of raising questions of criminal law for solemn determination was by removing proceedings into the King's bench by certiorari, and taking exception to them for some defect." John Baker, An Introduction to English Legal History 562 (5th ed. 2019). "At common law when not ancillary to other process, certiorari is in the nature of a writ of error. It has the same functions to inferior tribunals whose proceedings are not according to the course of the common law as the writ of error has to common-law courts." *Appalachia v. Mainous*, 121 Va. 666, 674 (1917) (citation omitted); *see also* 1 W.S. Holdsworth, A History of English Law 93 n.4 (1903) ("[W]hen a new jurisdiction is created by Parliament to act according to the course of the common law a writ of error can be brought from its decision. When they are to act in a summary way, or in a new course different from the common law, a writ of certiorari lies.").

Other statutory applications of this common-law writ have been preserved in proceedings under Code § 15.2-2314, which governs judicial review of certain local land-use decisions, *see, e.g.*, *Boasso Am. Corp. v. Zoning Adm'r of Chesapeake*, 293 Va. 203, 207 (2017), and in

9

The Commonwealth calls our attention to Rule 5:15(a)'s unqualified statement that "the record in this Court consists of the record as filed in the office of the clerk of the Court of Appeals." It does, of course — but that statement is primarily descriptive. To the extent Rule 5:15(a) has any prescriptive effect, it governs only the litigants and by implication forbids them from unilaterally adding anything to the appellate record so defined. *See Godfrey*, 227 Va. at 465. Rule 5:15(a) does not curtail an appellate court's common-law power to issue a writ of certiorari pursuant to Code § 8.01-673(A). *See id.* (stating that Rule 5:15(a) forbids enlargement of the record "except by our award of a writ of certiorari under Code § 8.01-673").

If a document was properly filed in the circuit court or legally deemed to be part of the record,[7] both the Court of Appeals and this Court have the power to ensure that the document is included in the appellate record. When we choose to exercise that power, we "award certiorari by which the clerk of the court below is directed to send to this court any and all parts of the record which have been omitted from the record transmitted to us." *Washington v. Commonwealth*, 216 Va. 185, 189 (1975). Nothing in our common-law tradition or in the statutory codifications of the writ of certiorari, however, compels a court to issue such writs and certainly nothing requires a court to do so sua sponte. In cases in which "[a] writ of certiorari was not requested" and "none was issued," we take "no further notice" of later-submitted documents. *Godfrey*, 227 Va. at 465.

Though no writ of certiorari was requested in the Court of Appeals, Eckard asks us to issue one. We will not do so. As Judge Burks pointed out, the writ of certiorari is "an

---

appellate proceedings requiring the inspection of "the record of the former appeal" pursuant to Code § 8.01-675.4, *see, e.g.*, *Granado v. Commonwealth*, 292 Va. 402, 408 (2016).

[7] Most, but not all, documents need to be filed with the clerk of the circuit court. *See, e.g.*, *Washington v. Commonwealth*, 216 Va. 185, 189 (1975) ("[A]n opinion letter of the trial judge is a part of the record on appeal without any requirement that it be filed with the clerk."). *See generally* Rule 5:10(a); Rule 5A:7(a).

10

extraordinary remedy." Burks, *supra*, § 202, at 332; *see also Roanoke v. Elliott*, 123 Va. 393, 408 (1918). Its modern application is to remedy "a defect of justice in cases obviously entitled to redress and yet unprovided for by the ordinary forms of proceedings." Burks, *supra*, § 202, at 332. In this case, there was no defect in the justice administered by the Court of Appeals. The judges of that court cannot be faulted for not considering documents never presented to them. Nor can they be criticized for not issuing a writ of certiorari never requested.

If there was any error in the Court of Appeals proceeding, it was entirely Eckard's for not ensuring that the certified record transmitted to the Court of Appeals was complete. He had notice of the omission nearly nine months before oral argument when the Court of Appeals provided him with access to the digital record certified by the circuit court. *See* CAV R. at 7. Yet he did nothing to remedy the defect before filing his opening brief before the Court of Appeals, after receiving the Commonwealth's brief pointing out the problem, during oral argument before the appellate judges who directly raised the issue, or at any time prior to the issuance of the appellate mandate. To be sure, he did not attempt to address the issue until five months after filing his petition for appeal in this Court and a couple of weeks after this Court had granted his appeal. Given these circumstances, it is far too late in the appellate process for Eckard to claim a right to the award of a writ of certiorari. We will treat the record transmitted to the Court of Appeals as the exclusive record before us.

B.

This brings us to the ultimate question whether the Court of Appeals erred by not reversing the trial court's decision to deny Eckard's motion to set aside the jury verdict. Based upon the record before the Court of Appeals, we hold that it correctly concluded that the trial court did not abuse its discretion in denying the motion.

11

In our constitutional republic, the citizen jury was historically understood to be "the 'lower judicial bench' in a bicameral judiciary," Akhil Reed Amar & Les Adams, The Bill of Rights Primer 138 (2002) (quoting John Taylor, An Inquiry into the Principles and Policy of the Government of the United States 209 (W. Stark ed., 1950) (1814)), and "the democratic branch of the judiciary power," *id.* (quoting Essays by a Farmer (IV), *reprinted in* 5 The Complete Anti-Federalist 36, 38 (Herbert J. Storing ed., 1981)). *See generally* Akhil Reed Amar, The Bill of Rights: Creation and Reconstruction 11, 81-118 (1998).

That said, jurors do not volunteer to serve in these ad hoc micro-democracies. They are compelled to do so as a civic duty and must swear allegiance to the instructions of law given by the presiding court. Their deliberations are presumptively secret, given the serious nature of their deliberations, the importance of open and robust debate of the facts of the case, and the compulsory nature of their participation in the judicial decision-making process. Because of these concerns, "Virginia has been more careful than most states to protect the inviolability and secrecy of jurors' deliberations. We have adhered strictly to the general rule that the testimony of jurors should not be received to impeach their verdict, especially on the ground of their own misconduct." *Jenkins v. Commonwealth*, 244 Va. 445, 460 (1992) (citation omitted). *See generally* Burks, *supra*, § 324, at 598-600. In this and many other contexts, we have "pointed out that the orderly administration of justice cannot be annulled by mere suspicion or possible inferences and that avoiding another trial, when the first trial was fair, is of paramount importance." *Caterpillar Tractor Co.*, 233 Va. at 82.

"A contrary rule would hold out to unsuccessful parties and their friends, the strongest temptation to tamper with jurors after their discharge, and would otherwise be productive of the

greatest evils." *Bull v. Commonwealth*, 55 Va. (14 Gratt.) 613, 632 (1857).[8] Like so many legal

maxims, however, the anti-impeachment rule is not absolute. We accept "that there may be

exceptional cases where juror testimony might be admissible to impeach their verdict to prevent

a miscarriage of justice." *Caterpillar Tractor Co.*, 233 Va. at 82-83.[9] But "even in cases in

which the testimony might be admissible, it ought to be received with very great caution."

*Washington Luna Park Co. v. Goodrich*, 110 Va. 692, 698 (1910) (quoting *Bull*, 55 Va. at 632);

*see also Cochran v. Street*, 1 Va. (1 Wash.) 79, 81 (1792) ("To meddle with the verdict of a jury,

upon the evidence of some of the jurors, is a delicate business, and should be proceeded in with

caution, to prevent the mischief of the jurymen being tampered with."); *Caterpillar Tractor Co.*,

233 Va. at 83 (imploring the use of "great care and caution").

Because the question is placed in the "sound discretion" of the trial judge, *Caterpillar*

*Tractor Co.*, 233 Va. at 82, only if "reasonable jurists could not differ can we say an abuse of

discretion has occurred," *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009) (citation omitted).

"The exercise of judicial discretion presupposes 'that, for some decisions, conscientious jurists

---

[8] Our view of the seriousness of this risk has been repeated many times. *See, e.g.*, *Phillips v. Campbell*, 200 Va. 136, 141 (1958); *Margiotta v. Aycock*, 162 Va. 557, 568 (1934); *Norfolk & W. Ry. v. White*, 158 Va. 243, 257 (1931); *Culpepper v. Robie*, 155 Va. 64, 91 (1930); *Bryan v. Commonwealth*, 131 Va. 709, 722-23 (1921); *Washington Luna Park Co. v. Goodrich*, 110 Va. 692, 698 (1910); *Street v. Broaddus*, 96 Va. 823, 827 (1899); *Danville Bank v. Waddill's Adm'r*, 72 Va. (31 Gratt.) 469, 483 (1879); *Steptoe v. Flood's Adm'r*, 72 Va. (31 Gratt.) 323, 344 (1879); *Read v. Commonwealth*, 63 Va. (22 Gratt.) 924, 947 (1872); *Howard v. McCall*, 62 Va. (21 Gratt.) 205, 212-13 (1871); *Thompson v. Commonwealth*, 49 Va. (8 Gratt.) 637, 650 (1851). *See generally* 4 John B. Minor, Institutes of Common and Statute Law 935 (3d rev. ed. 1893).

[9] *See also* Charles E. Friend & Kent Sinclair, Friend's Virginia Pleading and Practice § 20.04[2][a], at 20-19 n.89 (3d ed. 2017); Kent Sinclair, The Law of Evidence in Virginia § 10-6[c], at 593 (8th ed. 2018) ("This rule is not a complete prohibition of such impeachment, but it is clear that the policy of the courts is to receive such testimony only in exceptional circumstances."); *see, e.g.*, 5 Ronald J. Bacigal & Corinna Barrett Lain, Virginia Practice Series: Criminal Procedure § 18:7, at 713-14 (2023-2024 ed.) (recognizing that the "traditional rule . . . that jurors may not impeach their verdict by testifying as to statements made during deliberations" does not apply when "a juror made clear statements indicating that he relied on racial stereotypes or animus to convict a criminal defendant").

could reach different conclusions based on exactly the same facts — yet still remain entirely reasonable.'" *Commonwealth v. Barney*, 302 Va. 84, 94 (2023) (citation omitted). That observation makes us indifferent to the possibility that some "'trial judges and even some members of this Court, had [we] been sitting as trial judges in this case,' might have reached a different conclusion." *Id.* (citation omitted).

Viewing this case from that vantage point, we agree with the Court of Appeals that the trial court did not abuse its discretion by denying Eckard's motion to set aside the jury verdict. Under Virginia law, "neither the sole fact of irregularity nor the mere suspicion of injustice based upon the irregularity is sufficient to warrant setting aside a verdict." *Caterpillar Tractor Co.*, 233 Va. at 82 (citation omitted). Only in truly "exceptional cases," *Manor v. Hindman*, 123 Va. 767, 776-77 (1918), should a Virginia court vacate a jury verdict because of conflict between jurors affecting the deliberative process.[10]

Eckard's case is unusual but not exceptional. According to his motion to set aside the verdict and the exhibits attached to the motion, a juror made a "vague allegation" to the Sheriff's department claiming that he had voted with the "majority" because of some unspecified, threatening language by another juror. *Eckard*, 2023 Va. App. LEXIS 171, at *15, *18. The

_____

[10] Because our analysis focuses on allegations of conflict between jurors affecting the deliberative process, we need not address the nuances that may arise in other factual scenarios alleging juror misconduct. *See, e.g.*, *Haddad v. Commonwealth*, 229 Va. 325, 327-28, 330-31 (1985) (holding that a juror's lunchtime conversations during the trial with attorneys discussing another case established a probability of prejudice to the accused because the juror's statements reflected that he was no longer impartial); *McGuire v. Howard*, 203 Va. 965, 970-71 (1962) (holding that a juror's unauthorized view of the scene unduly influenced the outcome of the verdict and warranted a new trial); *Hinton v. Gallagher*, 190 Va. 421, 432 (1950) (noting that "[t]he reading by a juror of a document that is not properly introduced in evidence is a ground for mistrial, if there is sufficient ground to believe that one of the parties in a civil action, or the accused in a criminal case, has been prejudiced thereby"); *Merritt v. Bunting*, 107 Va. 174, 180-81 (1907) (holding that bribery of jurors by the defendant is sufficient to warrant a new trial). *See generally* Friend & Sinclair, *supra*, § 20.04, at 20-18 to -19 (listing types of juror misconduct for which a new trial may be justified).

disgruntled juror also "talked endlessly" about the two-day trial turning into one day and complained that the "jury was forced to stay late in the evening" and that "the judge only gave them one break the entire day." *Id.* at \*15-16. The Sheriff followed up with the juror by making several telephone calls and hand-delivering a letter asking the juror to either call or meet with the Sheriff, but the record does not show that the juror ever responded. Given the paucity of the allegations in Eckard's motion and attached exhibits, the Court of Appeals correctly held that the trial court did not abuse its discretion by refusing to vacate the jury verdict.

## C.

Finally, we must answer a related, but subtly different, question: Did the trial court err by not holding an evidentiary hearing for the purpose of determining whether to grant the motion to set aside the verdict? Given the abuse-of-discretion standard, we answer that question by first reframing it: Could reasonable jurists agree to disagree on whether the motion and exhibits warranted an evidentiary hearing? Based upon the motion and supporting exhibits provided to the trial court prior to its ruling, our answer would be "yes" — a trial court could with "great care and caution" exercise its "sound discretion," *Caterpillar Tractor Co.*, 233 Va. at 82-83, to hold (or not hold) such a hearing in Eckard's case.

In this case, the trial court apparently concluded that the double-hearsay account of a juror making a vague threat (as alleged in Eckard's motion and attached exhibits) did not warrant an evidentiary hearing.[11] The trial court could have come to the opposite conclusion, but it did

---

[11] We question whether Eckard made it clear to the trial court that he was requesting an evidentiary hearing on his motion. His motion only asked the trial court "to set aside the jury verdicts in this case and schedule this matter for further proceedings." 2 J.A. at 84. It would be reasonable to interpret this request as asking for (i) the verdict to be set aside and (ii) thereafter, a scheduling order to be entered to set the case for retrial. A court would not set aside the verdict before holding an evidentiary hearing to determine whether it should set aside the verdict. The trial court, however, arguably gave Eckard the benefit of the doubt when it quashed his

15

not abuse its discretion by choosing not to do so. In his appellate briefs, Eckard's argument to the contrary relies heavily on the written proffer that was not in the record before the Court of Appeals. *See* CAV R. at 26-27; Appellant's Br. at 3-4. As previously discussed, it is not before us either.[12] We are thus left with no basis to second-guess the trial court's decision to forgo an evidentiary hearing.

III.

In sum, the inadequacy of the appellate record, coupled with Eckard's unsubstantiated arguments in the trial court and on appeal, fully support the opinion of the Court of Appeals that the trial court did not abuse its discretion by denying Eckard's motion to set aside the verdict without an evidentiary hearing.

*Affirmed.*

---

subpoenas in its order denying the motion to set aside the verdict. We will assume without deciding that Eckard's evidentiary hearing request has been preserved for appeal.

[12] In oral argument before this Court, however, Eckard argued for the first time that the proffer was unnecessary to decide whether he was entitled to an evidentiary hearing on the juror misconduct issue because the email from the Sheriff's Office clerk sufficiently described the allegations as falling within Rule 2:606(b). *See* Oral Argument Audio at 2:45 to 2:49; *see also id.* at 3:58 to 4:16, 8:28 to 10:51, 12:23 to 13:32. We need not unpack the role of Rule 2:606(b), which governs the admissibility of testimony and affidavits from jurors for purposes of "an inquiry into the validity of a verdict or indictment." Eckard has not mentioned Rule 2:206(b) in any of his briefs in the trial court, the Court of Appeals, or this Court, *see Coward v. Wellmont Health Sys.*, 295 Va. 351, 367 (2018) (finding argument waived when not sufficiently briefed and argued), and our reasoning, like that of the Court of Appeals, turns not on the admissibility of evidence, but rather on the trial court's decision to not receive any evidence in support of Eckard's vague allegations. *See Eckard*, 2023 Va. App. LEXIS 171, at *19 n.5.